JUNE TERM
1836.

Rachael a woman
. of color
v.
Walker.

RACHAEL, A WOMAN OF COLOR v. WALKER.

An officer of the U. S. Army, who takes a slave to a [military post within the territory wherein slavery is prohibited, and retains her several years in attendance on himself and family, forfeits his property in such slave by virtue of the ordinance of 1787.

J. SPALDING for appellant.

Rachael is free.—1 see act of Congress of March 6th 1820; Story's U. S. Laws, page 1762, sec. 8, which forbids slavery north of 36 degrees, 30 minutes; also the ordinance of 1787, for government of territory north west of Ohio—1 vol. L. U. S. 475.

1 Mis. Rep. Winny v. Whitesides, 472; 3 Mis. Rep. Nat v. Ruddle 400 and Julia v. McKenney 270; as to the child, Merry v. Tiffin and Menard, 1 Mis. Dec. 725.

H. R. GAMBLE, for defendant.

It is admitted that the residence was such that in ordinary cases, would under the decisions of this court, entitle the plaintiff to her freedom—but in this case, she was taken to that territory, as the servant of an officer of the United States' army, and was never otherwise employed there, than as the servant of that officer.

The question then is, whether an officer of the army, who can never acquire a domicil, in any other than the State of which he was an inhabitant, when appointed, can take with him, wheresoever he may be ordered, such property as he may possess.

The fact that the officer here bought the negro after he had been ordered to the north-west territory, does not make the case stronger, for the slave then if she had been his when he was first ordered there since the law that emancipates applies to the residence of the slave and the character of that residence.

Opinion delivered by McGIRK, Judge.

Statement of the case. Rachael the plaintiff in error, brought an action according to the statute for freedom, the defendant Walker pleaded not guilty and a verdict and judgment were given for the defendant. It appears by the record, that in the fall of the year 1830, E. T. Langham, then residing in the Missouri territory, at or near the mouth of the St. Peters, came to St. Louis; and that one J. B. W. Stockton then sent by witness to Major Brant of St. Louis to purchase a slave; that the plaintiff was purchased for said Stockton, and was by the witness taken up to him to Fort

Snelling at St. Peters in the same fall. That there said Stockton held her as a slave till the fall of the year 1831, when he removed to Prairie du Chien, taking the said Rachael with him as his slave, at which place he held her in slavery, till about the spring of the year 1834, when he took her to St. Louis and sold her. That Fort Snelling is on the west side of the Mississippi river, and north of the State of Missouri, and in the territory of the United States. That said Stockton before he bought said Rachael, had resided at Fort Snelling about two years, and was still residing there when he bought the plaintiff, having just married. That Stockton while he resided at Fort Snelling was an officer of the U. S. army attached to troops there; that while Stockton was at Prairie du Chien he was also an officer in the service of the U. S. army; that Prairie du Chien is in the Michigan territory and east of the Mississippi. That Rachael was only employed in attendance on Stockton and his family. It appeared also, that Rachael was never employed otherwise than as a private servant in immediate attendance on Stockton and family, and all the time Stockton held her as aforesaid, he was in the service as an officer of the army. It also appeared that Walker, the defendant held under Stockton. Upon this state of evidence the circuit court instructed the jury that the law was, that if said Stockton was an officer of the army while he held the plaintiff in slavery, stationed at Fort Snelling and Fort Crawford by the proper authority, and if he employed the plaintiff during that time only in personal attendance on himself and family, that such residence of the plaintiff as has been proved, does not entitle her to freedom; this opinion was excepted to; motions were made for a new trial for misinstruction, which were overruled.

To sustain this judgment, Mr. Gamble contends that all the cases heretofore decided, proceed on the ground that a residence in the N. W. territory, was contrary to the ordinance of 1787, and amounted to a forfeiture of the property of the owner of a slave, for a violation of the ordinance, and that by all the decisions made by this court exceptions are allowed to exist, which exceptions to the positive words of the ordinance, must be raised of necessity. One case allowed by the court is this, that if a person be passing through the country with slave property, which he has a right to do, if high waters detain him with his slave, and he resumes his journey as soon as may be the time he necessarily staid with his slave, shall not be considered as a residence, so as to work a loss

JUNE TERM 1836.

Rachael a woman of color
v.
Walker.

JUNE TERM
1836.

Rachael a woman
of color
v.
Walker.

Opinion of the
court.

of the slave. He then contends that in this case, Stockton was a soldier of the American army, and as such, was bound to be and remain wheresoever his superior officer should command him to be; that the slave was only with him as a servant, not as a slave, and being obliged by law to be and remain in a country where slavery is forbidden, he had a right to have his servant there also.

Mr. Spalding answers this argument, by saying although this officer was bound by law and authority, to be and remain in a country where slavery is not allowed, yet no law nor public authority, required nor compelled him to take this person there as a slave nor as a servant.

Having stated the substance of the arguments on both sides, we will proceed to lay down the law as we understand it. It may not be unprofitable to state again, the principles on which this court has heretofore rested in the many decisions heretofore made in regard to this ordinance. It seems that the ingenuity of counsel and the interest of those disposed to deal in slave property, will never admit any thing to be settled in regard to this question. The ordinance of 1787, for the government of the north western territory, declares that neither slavery nor involuntary servitude shall exist in the same. The first case decided by this court was that of Winney v. Whiteside; the facts of that case were, that after the making the ordinance, Weiteside, the owner of Winney, removed from N. Carolina to Illinois, and brought with him Winney, and resided there three or four years, and left there and removed to Missouri, and took with him the slave; in that case the court declared that such residence, by force of the ordinance, manumitted the slave. In that case, the court say that the person who takes his slave into said territory, and by length of residence there, indicates an intention of making that place his residence, and the residence of his slave also, and thereby induces a jury to believe that fact also, by such residence declares his slave free.

And the court say in the case of Lagrang v. Menard that the court will raise other exceptions than those expressed in the ordinance; the case of Lagrang was one where the owner lived in Illinois and had his slave employed in Missouri, and the slave made occasional visits to his master's house in Illinois, the court declared this did not work an emancipation.

The case of Julia v. McKinney, decided by this court in 1833, goes further in detail, as to the exception which necessity may create, than any other.—3 vol. M. R. 270·

That case decides that when a person does not intend to introduce slavery in the State of Illinois, but does in fact introduce it, he will forfeit his slave unless he can shew some reasonable necessity. There is in the constitution of Illinois a provision of the same import of the provision in the ordinance; under this prohibition in the Illinois constitution, Julia was declared free. In all the cases decided by this court, it is admitted that the people of the United States have a right to pass through any of the districts where slavery is prohibited with their slaves, and while they justly retain the character of emigrants passing through the country, the fact that they have in their possession, when so passing slaves, does not emancipate them under the ordinance; and whether such owner has lost such character for the time being, depends on evidence to be adduced on the trial. Now if it could be proved that he declared his design was to reside there, this would be sufficient evidence that what he did was done in view of that intent; but if he should declare that it was not his design to reside there, and yet should do so, then the fact would be stronger than the words.

In the case of Julia, many cases are put to show that an owner of a slave might remain in the country for a considerable length of time, without working a forfeiture of his right to the slave. The court say in that case, if any accident should happen to the emigrant which in ordinary cases, would make it reasonable and prudent for him to suspend his journey for a short time, we think he might do so without incurring a forfeiture, if he resume his journey as soon as may be. Something more than the mere convenience or ease of the emigrant ought to intervene to save him from the forfeiture; something of the nature of necessity, should or ought to exist, before he ought to be exempt; if swollen streams of water, which could not be crossed without danger; serious sickness of the family; broken waggons and the like—these things, if they exist, would be good causes of delay, if the journey be resumed as soon as they are removed.

It may be that the language contained in this case, has induced the defendant, claiming under Stockton, to expect and hope his case would come within the words of the opinion, if not within its reason.

In that case, the court say there should be something like necessity existing, to justify the owner of a slave to keep such slave in the country, so as to save a forfeiture. The counsel insist on a necessity as regards the owner to stay and abide in the Missouri territory and Michigan for

JUNE TERM
1836.

Rachael a woman
of color
v.
Walker.

An officer of the
U. S. army, who
takes a slave to a
mility. post with-
in the territory
wherein slavery is
prohibited, and
retains her several
years in attend-
ance on himself
and family, for-
feits his property
in such slave by
virtue of the ordi-
nance of 1787.

more"than two years, and during all that time to keep the plaintiff there as a slave.

It is said the officer was under orders from the government to remain where he did, and therefore a necessity existed which brings him within the reason of the decision in Julia's case.

This plea of necessity, is well answered by Mr. Spalding for the plaintiff, which answer is, that though it be true that the officer was bound to remain where he did, during all the time he was there, yet no authority of law or the government compelled him to keep the plaintiff there as a slave. This answer is complete as we think; shall it be said, that because an officer of the army owns slaves in Virginia, that when as officer and soldier, he is required to take command of a post in the non slave holding States or territories, he thereby has a right to take with him as many slaves, as will suit his interests or convenience? It surely cannot be the law; if this be true, then it is also true that the convenience or supposed convenience of the officer, repeals as to him and others who have the same character, the ordinance and the act of 1821 admitting Missouri into the Union, and also the prohibitions of the several laws and constitutions of the non slave holding States. But it is said in this case that the plaintiff was only employed as a body servant, to induce the belief of the fact that the service she performed was necessary, or perhaps to establish the fact that the officer has a right to a family servant. We are yet to learn that the law which gives to officers servants of a certain sort, authorise such officers to hold slaves in lieu of such servants, and in places forbidden by the ordinance. In this case the officer lived in the Missouri territory at the time he bought the slave, he sent to a slave holding country and procured her, this was his voluntary act, done without any other reason than that of convenience, and he and those claiming under him must be holden to abide the consequence of introducing slavery both in Missouri territory and Michigan, contrary to law.

The judgment of the circuit court is reversed—the cause is remanded for a new trial.